Robert L. Levy
Sherie N. Buell
BANTLE & LEVY LLP
99 Park Avenue, Suite 1510
New York, New York 10016
(212) 228-9666
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

WILLIAM LAWLOR,

        Plaintiff,

        - against -

BENCHMARK EDUCATION COMPANY LLC
and THOMAS REYCRAFT,

        Defendants.

----------------------------------------------------------------------x

No. 21-CV-5425
ECF Case

**COMPLAINT
AND JURY DEMAND**

Plaintiff William Lawlor, by his attorneys, Bantle & Levy LLP, as and for his complaint against defendants, Benchmark Education Company LLC and Thomas Reycraft, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for employment discrimination based on age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA"), and the New York State Human Rights Law (the "Executive Law"), N.Y. Exec. Law § 290 et seq. Plaintiff seeks declaratory and injunctive relief and damages.

2. Plaintiff William Lawlor ("Lawlor") is a sixty-five year old man with over twenty years of experience as a senior finance leader. Lawlor has a proven professional track record of growing businesses and increasing business profitability.

3. In September 2017, Lawlor commenced employment with Defendant Benchmark Education Company LLC ("BEC" or the "Company") as Director of Marketing Operations. After an initial period of learning BEC's business and product lines, Lawlor excelled in the Director of Marketing Operations role, including meeting or exceeding revenue goals established by the Company for his performance.

4. Lawlor consistently received positive feedback on his performance from members of BEC's senior management, including directly from Chief Executive Officer, Thomas Reycraft ("Reycraft").

5. Notwithstanding his consistently strong performance and significant contributions to BEC, Lawlor was abruptly terminated by Reycraft on or about July 13, 2020, the first business day after Lawlor's sixty-fifth birthday, with such termination effective as of July 30, 2020. Although Lawlor had never mentioned a desire to cease working, Reycraft announced to Lawlor at the termination meeting that Reycraft was "retiring" Lawlor.

6. Although BEC and Reycraft have since claimed that Lawlor was terminated as part of a reduction in force at BEC necessitated by declining revenues, Lawlor was the only employee terminated on or about July 13, 2020.  Moreover, following the termination of Lawlor, BEC immediately took steps to find a new Director of Marketing, and eventually hired Lawlor's replacement.

7. As set forth in detail below, Defendants' decision to terminate Lawlor's employment was motivated by discriminatory animus on account of Lawlor's age.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 ("federal question") 1343(a)(3) and (4), and pursuant to 29 U.S.C. § 621 et seq. This Court has supplemental jurisdiction over Plaintiff's Executive Law claim pursuant to 28 U.S.C. §1367(a).

9. A substantial part of the acts giving rise to this action were committed within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b).

10. All conditions precedent to jurisdiction under 29 U.S.C. § 626(d) have occurred or been complied with:

    a. On or about October 16, 2020, Lawlor filed a written Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

    b. In his Charge of Discrimination, which was filed within 300 days of the adverse action of which Plaintiff complains in this action, Lawlor alleged that BEC discriminated against him on the basis of his age.

    c. On or about April 5, 2021, a Right to Sue notification was issued by the EEOC to Lawlor.

    d. This Complaint has been filed within 90 days of Lawlor's receipt of the EEOC's Right to Sue notifications.

## PARTIES

11. Plaintiff William Lawlor is a sixty-five year old man and citizen of the United States and the State of New York, residing in New Rochelle, New York.

12. Upon information and belief, defendant Benchmark Education Company LLC ("BEC") is a foreign limited liability company licensed to do business in the State of New York, with its principal place of business in New Rochelle, New York.

13. BEC is an educational publishing company that employs over one hundred employees and has annual revenues that have consistently exceeded One Hundred Million Dollars over the last several years.

14. Thomas Reycraft is Chief Executive Officer of BEC and a citizen of the United States and the State of New York, residing in Pelham Manor, New York.

15. At all times relevant to his claims, Plaintiff was an employee of BEC working at the Company's offices in New Rochelle, New York or working remotely from his residence in New Rochelle. Plaintiff was an employee of BEC within the meaning of ADEA 29 U.S.C. § 630(f).

16. At all times relevant herein, BEC is and was an employer engaged in industry affecting commerce, as defined in 29 U.S.C. § 630(h) and has employed more than 20 employees. BEC is an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

17. BEC is a person within the meaning of the ADEA and the Executive Law § 292(1).

## STATEMENT OF FACTS

**Lawlor's Background and Professional Experience**

18. Lawlor is a highly accomplished senior finance leader with an over twenty-year track record of growing businesses and increasing business profitability.

19. Lawlor received a Master's Degree in Business Administration ("MBA") from Pace University in 1986.

20. After earning his MBA, Lawlor founded and ran a private money management firm focused on start-ups and early-stage companies for approximately eight years.

21. Commencing in or about 1998, Lawlor managed and evolved trading operations for a highly successful investment management firm for approximately eighteen (18) years, first as Vice President of Trading and then as a Limited Partner and member of the firm's investment committee.

**Lawlor Joins BEC as Director of Marketing and Excels in the Performance of His Duties**

22. In or about 2017, Lawlor was recruited to join BEC by Reycraft, BEC's Chief Executive Officer.

23. Lawlor commenced employment with BEC in or about September 2017 as the Company's Director of Marketing Operations, after being deemed fully qualified to perform the functions of the Director of Marketing Operations position by BEC and Reycraft.

24. As Director of Marketing Operations, Lawlor's primary responsibility and objective was to improve product and pricing methodologies with the goal of increasing gross revenues at BEC.

25. Throughout his employment at BEC, Lawlor reported to BEC's Senior Vice President and Chief Financial Officer. Lawlor also received feedback on his performance from Reycraft, who maintained ultimate control over virtually every aspect of BEC's operations.

26. After an initial period of acclimating himself to BEC's business and product lines, Lawlor was entrusted with overseeing marketing operations at BEC with little formal managerial oversight or supervision.

27. After his ramp up period, Lawlor met or exceeded BEC and Reycraft's expectations for his performance, including meeting or exceeding the revenue goals set for him by the Company as the key metric of his performance.

28. As a result of the revenue gains made by the Company during his employment, Lawlor consistently received positive feedback on his performance from members of BEC's senior management, including regularly receiving positive feedback directly from Reycraft.

29. Other than receiving periodic congratulations for his revenue generation numbers, Lawlor received no formal performance evaluations from the Company.

30. In or about February 2020, in the hope of eliciting a formal review of his employment from senior management, Lawlor prepared a self-evaluation to Human Resources. The Company did not provide a performance review to Lawlor, however, insofar as the Company found it unnecessary to provide constructive feedback on his performance given that Lawlor was delivering on his objectives and not in need of significant supervision or monitoring.

31. Among other praise he provided to Lawlor, Reycraft consistently acknowledged that Lawlor made "important contributions to the business" at BEC.

32. In or about March 2020, BEC engaged in a significant downsizing of its personnel in anticipation of the COVID pandemic negatively impacting its business operations. BEC terminated approximately 45 employees at that time.

33. Given the key role he played in marketing BEC's products and his strong record of success in driving revenues, Lawlor was not considered for termination as part of BEC's downsizing.

34. In fact, with the COVID pandemic potentially negatively impacting revenue generation at BEC, Lawlor's proven track record of driving revenue at BEC was at a premium for the Company in the first half of 2020.

35. At or about the time BEC engaged in a downsizing of its personnel, BEC received a substantial Paycheck Protection Program loan from the United States Small Business Association (the "PPP Loan").

36. Shortly after receiving the PPP Loan, Reycraft advised managerial staff at BEC, including Lawlor, that due to the Company receiving a forgivable PPP Loan the Company would not engage in further downsizing or reductions-in-force during 2020.

37. Subsequent to BEC's downsizing of personnel in or about March 2020, Lawlor continued to receive consistent praise for his performance from BEC's senior leadership. Indeed, this praise continued virtually up to the date of Reycraft's dismissal of Lawlor.

38. For example, on Friday, July 10, 2020, just one business day prior to Lawlor's termination on the following Monday, BEC's Chief Operating Officer, Sera Reycraft, described Lawlor as "the best" among us and told Lawlor that he had earned the "love" of the "BEC

family" through his hard work, productivity and professionalism. This praise was echoed and endorsed by Reycraft.

**Reycraft Abruptly "Retires" Lawlor Based on
<u>Lawlor's Age Right After Lawlor's Sixty-Fifth Birthday</u>**

39. On Friday, July 10, 2020, Lawlor turned sixty-five years old. Lawlor did not consider this to be a significant personal or professional milestone, and preferred that his birthday be treated as just another day in his care by BEC.

40. Unlike Lawlor, however, Reycraft and BEC imbued Lawlor's sixty-fifth birthday with great and undue significance.

41. Without Lawlor's knowledge or consent, Reycraft organized an intra-Company Zoom call attended by approximately thirty BEC employees, and by members of Lawlor's family, for the sole purpose of acknowledging Lawlor's sixty-fifth birthday.

42. This Zoom call birthday event was unprecedented during Lawlor's tenure at BEC.

43. Notwithstanding that during the Zoom call, CEO Reycraft and COO Sera Reycraft led BEC-personnel in singing Lawlor's praises as a professional and person, Lawlor found this event unwelcome and embarrassing insofar as it focused undue attention on his age.

44. On Monday, July 13, 2020, the very next business day after the Zoom call "celebrating" his sixty-fifth birthday, Reycraft contacted Lawlor and, without warning, terminated his employment effective July 31, 2020.

45. Displaying the extent to which he was motivated and influenced by Lawlor's age in making the decision to terminate his employment, in the termination meeting Reycraft described the termination as a decision to "retire" Lawlor and described July 31, 2020 as Lawlor's "retirement date."

46. In at least one written communication authored by Reycraft subsequent to Lawlor's termination, Reycraft acknowledged his use of age-based, retirement language in characterizing Lawlor's termination.

47. On information and belief, Reycraft would not, and has not, described termination of younger employees, including employees under the age of forty, as "retiring" those employees.

48. Prior to Reycraft's abrupt termination of Lawlor, neither he nor anyone else at BEC had given Lawlor formal or informal negative feedback on his performance or given him performance warnings.

49. Prior to Reycraft's abrupt termination of Lawlor, Lawlor was never subject to employee discipline of any kind by Reycraft or anyone else at BEC.

50. At the time Reycraft terminated Lawlor's employment with BEC, Lawlor was among the Company's oldest employees.

**BEC/Reycraft Have Failed to Articulate a Legitimate**
**Business Justification for the Decision to "Retire" Lawlor**

51. In an apparent effort to disguise its unlawful conduct, BEC intentionally mischaracterized the circumstances of Lawlor's termination in a number of internal communications.

52. Specifically, and in lieu of a legitimate business justification for termination, BEC falsely claimed that Lawlor resigned his employment.

53. After Lawlor challenged BEC's claim he had resigned his employment and raised concerns about the basis for his termination, Reycraft claimed for the first time that Lawlor was being let go as part of downsizing at BEC.

9

54. As BEC records will clearly establish, however, this *ex poste facto* rationale for Lawlor's termination cannot withstand scrutiny because it does not fit the facts.

55. There was no Company-wide reduction in force at BEC in or about mid or late-July 2020. To the contrary, Lawlor was the only senior employee terminated by BEC in or about late-July, 2020, and, upon information and belief, may have been the only employee terminated by BEC at that time.

56. In addition, shortly after terminating Lawlor's employment, BEC began a job search to replace Lawlor as Director of Marketing Operations.

57. As one step in this job search, in or about August 2020, BEC posted a job advertisement for the position of Director of Marketing Operations on LinkedIn.

58. Ultimately, BEC hired a replacement for Lawlor as Director of Marketing Operations. The Director of Marketing Operations hired by BEC is substantially younger than Lawlor.

**Lawlor Was Terminated by BEC/Reycraft Because of His Age**

59. Lawlor's age was the motivating factor in BEC and Reycraft's decision to terminate Lawlor's employment at BEC and the alternative justification provided by BEC for that decision is purely pretextual.

60. As a consequence of that termination decision, BEC and Reycraft have discriminated against Lawlor in the terms and conditions of his employment based on his age, including, denying Lawlor continuing opportunities for employment, recognition, increased compensation and other benefits and perquisites of employment at BEC.

61. As a result of BEC and Reycraft's discriminatory conduct, Lawlor has suffered a loss of income, professional stature, benefits and other perquisites of employment.

62. As a result of BEC and Reycraft's discriminatory conduct, Lawlor has sustained serious pain and suffering, and severe mental and emotional harm and distress.

63. The aforesaid acts and conduct by BEC, its agents and employees, and Reycraft, were performed willfully, intentionally, maliciously and with reckless indifference to Lawlor's protected rights.

## JURY DEMAND

64. Plaintiff hereby demands trial by jury.

## AS AND FOR A FIRST CAUSE OF ACTION
### (as against defendant BEC)

65. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 64 as if fully set forth herein.

66. As a result of defendant BEC's aforesaid acts, BEC has discriminated against plaintiff on account of his age with respect to the terms, conditions and privileges of employment in violation of the ADEA, 29 U.S.C. § 621 et seq.

67. As a result of defendant BEC's discrimination against him, Plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of his employment opportunity with BEC, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

**AS AND FOR A SECOND CAUSE OF ACTION**
(as against defendants BEC and Reycraft)

68. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 67 as if fully set forth herein.

69. As a result of Defendants' aforesaid acts, Defendants BEC and Reycraft have discriminated against plaintiff on account of his age with respect to the terms, conditions and privileges of employment in violation of the New York State Executive Law § 290 et seq.

70. As a result of Defendants' discriminatory and adverse acts, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

**AS AND FOR A THIRD CAUSE OF ACTION**
(as against defendant Reycraft)

71. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 70 as if fully set forth herein.

72. As a result of the foregoing, defendant Reycraft has aided, abetted, incited, compelled and coerced acts forbidden by the New York State Executive Law §296(6). Specifically, Reycraft has aided, abetted, incited, compelled and/or coerced discrimination against Plaintiff on account of his age with respect to the terms, conditions and privileges of employment.

73. As a result of Defendant Reycraft's unlawful acts, Plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief against Defendants:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.;

(2) Actual damages in the form of (a) back pay with interest based on Plaintiff's appropriate compensation had he not been unlawfully terminated; and (b) reimbursement for lost bonuses, health benefits, 401K contributions, social security, experience, training opportunities, and other benefits, in an amount to be proved at trial;

(3) Reinstatement to the highest position to which Plaintiff was and would be entitled and/or front pay;

(4) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial, but believed to exceed $250,000;

(5) Punitive damages in an amount not less than $1,000,000;

(6) Statutory attorneys' fees, costs and disbursements;

(7) Interest; and

(1) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
June 15, 2021

                                  BANTLE & LEVY LLP

                              By: *Robert Levy*
                                  Robert L. Levy
                                  Sherie N. Buell
                          99 Park Avenue, Suite 1500
                          New York, New York 10016
                          (212) 228-9666
                          Attorneys for Plaintiff
                          levy@civilrightsfirm.com
                          buell@civilrightsfirm.com